NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 8 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JANDY DAMARI PADILLA ORTIZ, Petitioner, v. MERRICK B. GARLAND, Attorney General, Respondent. | No. 19-70488 Agency No. A215-546-975 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 9, 2021**
Pasadena, California

Before: W. FLETCHER, WATFORD, and HURWITZ, Circuit Judges.

Jandy Damari Padilla Ortiz, a native and citizen of Honduras, petitions for

review of a decision of the Board of Immigration Appeals ("BIA") dismissing her

appeal from an order of an Immigration Judge ("IJ") denying asylum, withholding

of removal, and Convention Against Torture ("CAT") protection. We grant the

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

petition for review in part and deny it in part.

1. Padilla testified to years of physical and sexual abuse at her stepfather's hands beginning when she was seven years old. She did not report the incidents to the police because she felt they would not help her, a belief informed by her sister's and a neighbor's fruitless attempts to report abuse they suffered from others. She also testified that she could not relocate within Honduras because her stepfather threatened to find and kill her, and that Honduras is unsafe for women. Padilla proposed three social groups: (1) Honduran women; (2) dependent children of women unable to leave domestic relationships; and (3) her stepfather's immediate family. The IJ determined that Padilla had suffered persecution but denied relief. The IJ found the first proposed social group, "Honduran women," overbroad and therefore not cognizable. As to the second group, "children of women unable to leave domestic relationships," the IJ assumed cognizability, but held that Padilla could not prove membership, noting that Padilla's mother was able to leave prior relationships. And, as to the third group, the IJ found a lack of nexus between the persecution and Padilla's membership in the group, stating that the abuse she suffered was "due to [her stepfather] being a violent person, not because [he] was somehow inflicting harm on members of [Padilla's] family in order to change some immutable characteristics of that group."

2

2. In dismissing Padilla's appeal, the BIA stated that the IJ correctly found a lack of nexus between Padilla's proposed social groups and any persecution. But the IJ's nexus finding cited by the BIA applied only to the third proposed social group. Lack of nexus is a factual finding, *see Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010), and as to the other two of the proposed social groups, the BIA purported to uphold nexus findings the IJ never made with respect to those groups. Because the BIA may not "substitute its own view of the facts" for those of the IJ, *Ridore v. Holder*, 696 F.3d 907, 919 (9th Cir. 2012), we grant the petition for review as to the asylum and withholding claims and remand for further proceedings.[1]

3. The BIA also erred in several other respects with respect to the asylum and withholding claims.

*First,* the BIA faulted Padilla for failing to report her abuse. We have recognized, however, that children are "unlikely to report" such abuse. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1069–72 (9th Cir. 2017) (en banc). Although Padilla was a young adult when she sought asylum, she was a child when she

---

[1] Despite pretermitting the issue of social group cognizability, the BIA noted that the IJ's decision found some support in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("*A-B- I*"), which held that domestic violence perpetrated by nongovernmental actors generally will not qualify an applicant for asylum or withholding. *See also Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) ("*A-B- II*"). In June 2021, the Attorney General vacated *A-B- I* and *A-B- II*. *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021) ("*A-B- III*"). The agency should address cognizability under the current standards on remand.

3

experienced the abuse. *See id.* at 1055, 1071.

*Second*, the BIA faulted Padilla for determining it would be futile to report the abuse based on stories told to her by someone else. But *Bringas-Rodriguez* credited similar "hearsay" stories about the futility of reporting by a child victim where they were "sufficiently specific to be deemed credible." *Id*. at 1074 n.17. Here, Padilla testified about two stories of futile reports—one from her sister and one from a neighbor. The IJ found Padilla credible, and the BIA did not upset that finding.

*Third*, the BIA improperly relied on a 2017 State Department report showing that the Honduran government "had taken steps" to address domestic violence. The BIA did not consider Padilla's status as a *child* sexual abuse victim, relying instead on a report discussing domestic violence generally. Because children are unlikely to report abuse, "it is similarly unlikely that country reports or other evidence will be able to document the police response, or lack thereof, to the sexual abuse of children." *Id*. at 1071. Indeed, Padilla presented expert testimony and documentary evidence to corroborate her claims and explained her reasons for not reporting. *See Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1056–57 (9th Cir. 2006).

4. The BIA's denial of humanitarian asylum rested on the same errors. An applicant may receive humanitarian asylum if she shows "(1) compelling reasons for being unwilling or unable to return . . . arising out of the severity of the past

persecution, or (2) a reasonable possibility that he or she may suffer other serious harm upon removal." *Belishta v. Ashcroft*, 378 F.3d 1078, 1081 (9th Cir. 2004) (quoting 8 C.F.R. § 1208.13(b)(1)(iii)). Here, the BIA found humanitarian asylum "inapplicable" based on the flawed nexus determination.

5. However, substantial evidence supports the denial of CAT relief. For CAT purposes, "[a]cquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Ornelas-Chavez*, 458 F.3d at 1059 (quoting 8 C.F.R. § 208.18(a)(7)). Padilla never claimed any public actor was aware of her mistreatment. Nor did she establish that it is more likely than not that she would be tortured with the consent or acquiescence of the government in the future upon removal.

**PETITION FOR REVIEW GRANTED IN PART AND DENIED IN PART; REMANDED. THE PARTIES SHALL BEAR THEIR OWN COSTS.**